**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NICHOLAS JOVANOVIC,** *Individually and as Administrator for the Estate of Pavle Jovanovic*, <br><br> Plaintiff, <br><br> v. <br><br> **THE UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE., *et al.*,** <br><br> Defendants. | Civil Action No. 22-2098 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon two motions to dismiss filed by (1) Defendant the United States Olympic and Paralympic Committee ("USOPC") (ECF No. 126), and (2) Defendant the USA Bobsled/Skeleton, Inc. ("USABS") (ECF No. 127) (collectively, "Defendants") following this Court's previous denial of Defendants' motions to dismiss and the completion of jurisdictional discovery. (ECF Nos. 55, 56.)[1] Defendants individually submitted briefs in support of the motions. ("USOPC Br.," ECF No. 126-1; "USABS Br.," ECF No. 127-1.) Defendants also individually submitted various exhibits from jurisdictional discovery. (ECF Nos. 126-2; ECF Nos. 127-2 to 127-12.) Plaintiff Nicholas Jovanovic ("Plaintiff"), individually and as administrator of the estate of Pavle Javanovic, filed opposition briefs in response to both motions. ("Opp'n Br. I," ECF No. 132; "Opp'n Br. II," ECF No. 133.) Plaintiff also submitted various

---

[1] *Jovanovic v. United States Olympic & Paralympic Comm.*, Civ. No. 22-2098, 2023 WL 7179298, at *1 (D.N.J. Mar. 31, 2023).

exhibits. (ECF Nos. 132-1 to 132-24; ECF Nos. 133-2 to 133-21). Defendants individually filed reply briefs, ("USOPC Reply," ECF No. 135; "USABS Reply," ECF No. 134), and Plaintiff filed a sur-reply to USOPC's reply. ("Sur-Reply," ECF No. 138.)[2] The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[3] For the reasons set forth below, the Court will **GRANT** USOPC's Motion and **DENY** USABS's Motion.

I.   **BACKGROUND AND PROCEDURAL HISTORY**[4]

The facts giving rise to Plaintiff's claims are known to the parties. Briefly, Pavle Jovanovic ("Pavle"), Plaintiff's late brother, was a former elite Olympic bobsled athlete. ("Am. Compl.," ¶¶ 89, 91, 92, ECF No. 61.) Pavle represented the United States in nine BMW IBSF World Cups, was a member of the United States Bobsled Team during the 2002, 2006, and 2010 Olympic cycles, and competed in the 2006 Olympics. (*Id.* ¶ 96.) In 2006, upon his return home from the Olympics, Pavle began to exhibit post-competition fatigue which later turned into cognitive impairment. (*Id.* ¶¶ 100–102.) Pavle was believed to have Chronic Traumatic Encephalopathy ("CTE") which appeared in the form of confusion and fatigue. (*Id.* ¶ 101.) That confusion later turned into frustration and anger. (*Id.*) In 2009 and 2010, a few years after first exhibiting signs of cognitive decline, Pavle developed a light sensitivity and later an alcohol abuse problem, emotional problems, and behavioral instability. (*Id.* ¶¶ 103, 104, 106.) Pavle was ultimately

---

[2] The USOPC submitted a letter asking for leave to file a sur-sur-reply in response to Plaintiff's Sur-Reply. (ECF No. 139.) Given the extensive briefing on the issue already and lack of prejudice to the USOPC, the Court denies that request and does not consider the USOPC's proposed sur-sur-reply.
[3] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[4] For the purposes of considering the Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor.").

2

diagnosed with alcoholism, bi-polar disorder, and depression, all purportedly stemming from his CTE. (*Id.* ¶ 108.) In May 2020, Pavle tragically took his own life. (*Id.* ¶ 111.)

As to the parties involved in this action, the USOPC is a federally-chartered nonprofit corporation created by the federal Ted Stevens Olympic and the Amateur Sports Act, with a principal place of business in Colorado Springs, Colorado. (*Id.* ¶¶ 18, 19.)[5] The USOPC is responsible for the "development, safety, and training of athletes for their sports, as well as for the selection, organization, promotion, and support of American athletes for the Olympic Games and other domestic and international competitions." (*Id.* ¶ 21.) The USABS is a nonprofit corporation, with a principal place of business in Lake Placid, New York, and governs the Men's and Women's Bobsled National Teams, among others. (*Id.* ¶¶ 34, 35.) The USABS is a national governing body "responsible for the development, safety, and training of bobsled and skeleton athletes, as well as for the selection, organization, promotion, and support of American athletes for the USABS Olympic Teams, National Teams, and Development Teams."[6] (*Id.* ¶ 38.)

On February 23, 2022, Plaintiff initiated this action in New Jersey Superior Court. (*See generally* Compl., ECF No. 1-2.) Defendants timely removed the suit to this Court. (ECF No. 1.) Defendants then filed motions to dismiss arguing that the Court lacked personal jurisdiction over them. (ECF Nos. 29, 48.) On March 31, 2023, the Court denied the motions and granted Plaintiff's request for leave to conduct jurisdictional discovery. (ECF No. 55.) The Court found that "Plaintiff has raised enough jurisdictional contacts to persuade the Court, in its discretion, to [grant] Plaintiff's request for leave to conduct jurisdictional discovery as to both Defendants." (*Id.*

---

[5] Congress's goal in creating the USOPC was "to correct the disorganization and the serious factional disputes that seemed to plague amateur sports in the United States." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 544 (1987).

[6] The Court takes judicial notice of the fact that national governing bodies are organizations that govern and manage all aspects of their individual sports within the United States. They are responsible for training, competition, and development for their sports, as well as nominating athletes to the U.S. Olympic and Paralympic Teams.

at 17.) Plaintiff then filed an Amended Complaint (ECF No. 61)[7] and discovery took place over the next several months. Thereafter, Defendants filed the current motions to dismiss. (ECF Nos. 126, 127.)

## II.   SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

## III.   LEGAL STANDARD

Pursuant to Rule 12(b)(2), a complaint is subject to dismissal for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "If the district court does not hold an evidentiary hearing, the plaintiff[] need only establish a *prima facie* case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotations and citation omitted). "It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). Still, "[w]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, Civ. No. 14-6428, 2015 WL 5164791, at *5 (D.N.J. Sept. 2, 2015) (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)).

---

[7] The Amended Complaint alleges three counts against the USOPC and the USABS for: (1) negligence; (2) negligent; misrepresentation; and (3) wrongful death. (Am. Compl. ¶¶ 400–437.) Plaintiff alleges that the USOPC and USABS breached their duty of care to Pavle by failing to research, study, and examine the dangers and risks of head injuries and in failing to inform athletes about their findings. (*Id.* ¶ 402.) Plaintiff also alleges that Defendants were careless and acted with intentional disregard for the safety of their athletes by failing to educate and warn athletes about the risks of bobsledding. (*Id.* ¶ 411.)

## IV.   DISCUSSION

Defendants seek dismissal of Plaintiff's Amended Complaint pursuant to Rule 12(b)(2) and the USOPC seeks dismissal, in the alternative, under Rule 12(b)(6).  First, the Court will decide the portion of each Defendants' Motions seeking dismissal for lack of personal jurisdiction.  If jurisdiction exists as to the USOPC, the Court will proceed to the merits of its Rule 12(b)(6) Motion.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (finding that generally a federal court may not rule on the merits of a case without first determining that it has subject matter jurisdiction and personal jurisdiction over a party).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales*, 384 F.3d at 96 (citing Fed. R. Civ. P. 4(e)).  The New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted).  More precisely, "[t]he Due Process Clause of the Fourteenth Amendment requires that non-resident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)).  "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)).  Here, the Court only addresses

specific personal jurisdiction because it has already found that Plaintiff has waived his argument as to general jurisdiction.[8] (ECF No. 55 at 6 n.3.)

The inquiry as to whether a court may exercise specific personal jurisdiction over a non-resident defendant is tripartite. *See O'Connor*, 496 F.3d at 317. First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (stating that for specific personal jurisdiction, the defendant must have "deliberately 'reached out beyond' its home" (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014))). The unilateral activity of a third party cannot satisfy the requirement that the defendant have minimum contacts with the forum state. *See Hanson*, 357 U.S. at 253 (noting that the mere "unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State").

Second, if there is purposeful availment by a non-resident defendant, a court may exercise personal jurisdiction over that defendant only when a plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum state. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

---

[8] This determination is law of the case. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (noting that "the doctrine of law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *Est. of DeRosa v. Murphy*, Civ. No. 22-02301, 2025 WL 249169, at *4 (D.N.J. Jan. 21, 2025) (explaining that a prior judge's ruling on an issue earlier in the case precluded the losing party from reasserting the claim at a subsequent stage in the case).

Third, if the non-resident defendant purposefully avails itself, and the plaintiff's claims arise out of or relate to the defendant's contacts with the forum state, "due process requires . . . that the maintenance of the suit [against the defendant] does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### A.    SPECIFIC PERSONAL JURISDICTION OVER USOPC

For the reasons that follow, the Court finds that it lacks specific personal jurisdiction over the USOPC. Specifically, the USOPC did not purposefully direct activities towards the forum state. Because Plaintiff cannot show purposeful availment, the Court need not address the remaining two prongs of the specific personal jurisdiction analysis.

In its Motion, the USOPC denies purposefully directing activities towards New Jersey because it "did not recruit [Pavle] or any other bobsled athlete, did not host athletic competitions in New Jersey, did not operate training centers or training sites in New Jersey, did not control any assets in New Jersey, and also did not have any interactions with [Pavle]." (USOPC Br. at 3, 13.) In its opposition brief, Plaintiff argues that the evidence establishes that the USOPC purposefully availed itself of the privilege of conducting activities in New Jersey by (1) knowingly paying (through grant money) for the construction of a bobsled track in Pavle's backyard, (2) using the United States Olympic Paralympic Association to cultivate and grow relationships in New Jersey via community building and outreach, (3) receiving major contributions from individuals and corporations in New Jersey, (4) targeting New Jersey by hosting special fundraising events like the "Night of Champions," and (5) continuously and deliberately cultivating relationships with New Jersey companies to obtain their support, including the support in "providing cutting-edge

7

sports science and sports medicine facilities" to United States athletes like Pavle. (Opp'n Br. I at 12–14.)

As an initial matter, neither the allegations in the Amended Complaint nor the evidence from jurisdictional discovery sufficiently show that the USOPC specifically targeted New Jersey. For example, between 1997 and 2008, the USOPC did not own any training sites in New Jersey. ("USOPC Response to Interrogatory," ECF No. 126-2 at 6.)[9] The record reflects that the training sites in New Jersey were independently owned facilities and not owned by the USOPC. (*Id.*) Additionally, during the relevant time period, the USOPC's Sports Medicine Division, Sports Performance Division, and Sports Medicine Volunteer Program did not own, operate, control, or manage any buildings, facilities, clinics, lands, or leaseholds in New Jersey. (*Id.* at 9.) Moreover, discovery revealed that during the relevant time period, the USOPC did not host any conferences or symposia in New Jersey (*id.* at 15, 16; T1 191:15-19),[10] did not own any assets of real property in New Jersey (T1 192:4-15), did not host, promote, support, or oversee Olympic trials related to bobsledding in New Jersey (T1 191:3-6), did not host any athletic competitions related to bobsledding in New Jersey (T1 190:24-191:10; USOPC Responses to Interrogatories at 25), and did not provide any healthcare services to Pavle in New Jersey (T1 191:19-22). In fact, there are no bobsled tracks in New Jersey, and the USOPC does not recruit athletes for the USABS team. (T1 191:11-14.) To add, Lisa Carlock's deposition revealed that the USOPC likely did not receive any information about the USABS's recruiting events in New Jersey when they conducted their three recruiting events. (T2 97:18-25.)[11]

---

[9] The number indicates the page number of the interrogatory, not the interrogatory number.
[10] T1 refers to the transcript of the September 9, 2024 deposition of Katherine DeStefano, a Rule 30(b)(6) witness for the USOPC, attached to the USOPC's Motion at ECF No. 126-2 and Plaintiff's Opposition brief at ECF No. 132-15. Katherine DeStefano is the Associate General Counsel of Litigation & Dispute Resolution for the USOPC.
[11] T2 refers to Lisa Carlock's deposition transcript that was attached to the USOPC's Motion. (ECF No. 126-2.) Lisa Carlock is a Rule 30(b)(6) witness and current Chief Financial Officer of the USABS.

Plaintiff's theory of personal jurisdiction is largely premised on the fact that Pavle received funds from the USOPC with the knowledge that Pavle intended to build a bobsled track in his backyard. The USOPC argues that it did not have knowledge that Pavle would build a bobsled track. (USOPC Br. at 20.)[12] In rebuttal, Plaintiff argues that Pavle's grant form shows that the money would be used for such a purpose. (USABS Br. at 17–18; ECF No. 127-12.) On this point, Plaintiff attests that he was "able to construct the track [in his backyard] through funding provided by the USOPC," which he argues is sufficient to exercise jurisdiction over the USOPC. (Jovanovic Declaration ¶ 10). The Amended Complaint moreover alleges that the grant money provided by the USOPC was used to purchase training equipment and to construct/refine a land push track in Pavle's backyard. (Am. Compl. ¶¶ 65, 77.) In a reply brief, the USOPC argues that Pavle's unilateral choice to build a bobsled track with the grant money does not show that the USOPC directly targeted New Jersey. (USOPC Reply Br. at 2.)

The Court finds that the allegations in the Amended Complaint related to the grant money are insufficient to show purposeful availment because contracting with a resident of the forum state, without more, is insufficient to confer specific personal jurisdiction. *Sovereign Consulting Inc. v. Cover Technologies Inc.*, Civ. No. 21-35, 2021 WL 2802219 at *4 (D.N.J 2021). Additionally, the Court finds that the construction of the bobsled track was the direct actions of Pavle and Plaintiff and not the purposeful contacts of the USOPC with New Jersey. In other words, the intersection between the alleged building of the track and the use of the grant money for the track is a "random, fortuitous, or attenuated" contact with New Jersey. *See Walden*, 571 U.S. at

---

[12] The USOPC concedes that "[a]t bottom, the only potentially relevant contact between the USOPC and New Jersey is [Pavle's] receipt of financial support from the USOPC while [Pavle] resided in the State." (USOPC Br. at 14.) The USOPC suggests that although it provided money to Plaintiff in New Jersey, it did not specifically target New Jersey in a way relevant to personal jurisdiction. (*Id.* at 18.) On this point, the USOPC argues that it was the USABS that set the criteria for distributing grants to Pavle, not the USOPC. (*Id.* at 19.)

9

286. The application for the tuition grant did expressly state that Pavle would pursue a civil engineering degree *and* that the grant would assist in "[e]xtending and fine tuning a push track [Pavle] built with [his] previous grant money[.]" (*See* ECF No. 132-3.) But even if the USOPC had knowledge that the grant money would be used for refining the bobsled track, it was not USOPC's decision to build it, much less refine it, in New Jersey. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 109 (1987) ("[F]oreseeability is wholly irrelevant to personal jurisdiction."). The USOPC's knowledge only shows that it was engaged in transactions with a forum resident, which alone does not give rise to specific personal jurisdiction. *Sovereign Consulting Inc.*, 2021 WL 2802219 at *4.

In addition to the grant money used for the bobsled track, it is undisputed that (1) the USOPC gave money to Pavle in the form of tuition assistance and grants, and (2) the USOPC received funds and sponsorships from various corporate entities in New Jersey. First, as it relates to Pavle's receipt of funds, as briefly discussed regarding the bobsled track, giving Pavle funds is insufficient to confer specific personal jurisdiction in New Jersey because the payment of funds to a forum resident, without more, does not show a deliberate targeting of New Jersey. *See Traisman v. Khmelnitsky*, Civ. No. 19-11045, 2020 WL 2847751, at *9 (D.N.J. June 1, 2020) (rejecting the plaintiff's argument that the receipt of funds from the defendant is sufficient to confer specific personal jurisdiction); *G&C Fab-Con, LLC v. M&S Civ. Consultants, Inc.*, Civ. No. 20-8425, 2021 WL 268177, at *5 (D.N.J. Jan. 27, 2021) ("[E]ven if the record clearly indicated that the plaintiff was processing pay applications or payments from the defendant, this is only one factor to consider among the totality of the circumstances.").

Similarly, it is well-settled law that merely entering into a contract—or in this case, a grant or agreement for funds—with a forum resident does not subject a non-resident to personal

10

jurisdiction. *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident."); *see also Walden*, 571 U.S. at 285 (noting that the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *O'Connor*, 496 F.3d at 317 ("[C]ontacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself."); *Drayage Express, LLC v. Int'l First Serv. United States*, Civ. No. 15-3597, 2017 U.S. Dist. LEXIS 47999, at *15 (D.N.J. Mar. 29, 2017) (defendant's contract with a New Jersey-based co-defendant was insufficient to establish the requisite contacts with New Jersey to support specific jurisdiction). But payments to an in-state resident along with *additional contacts* could give rise to minimum contacts. *Sovereign Consulting Inc.*, 2021 WL 2802219 at *4. Here, even after discovery, Plaintiff has not shown the additional contacts that are required for the Court to exercise specific personal jurisdiction over the USOPC.

On this point, jurisdictional discovery revealed that the USOPC gave Pavle $182,432.37 in grants and other forms of financial assistance payments. (USOPC Responses to Interrogatories at 26–30.) The USOPC also provided tuition assistance to Pavle. (T1 176:18-25, 178:8-9.) The grants, however, were set by the USABS and not the USOPC. (T1 193:22-25.) In fact, discovery showed that the USOPC does not have any power over how national governing bodies, like the USABS, run their day-to-day operations, so any contacts that the USABS has with New Jersey are irrelevant to the USOPC. (T1 188:17-20.) Although the Amended Complaint alleges that the USOPC has the authority to prioritize the health and wellness of athletes and to disseminate information to its governing bodies (Am. Compl. ¶ 25), according to Katherine DeStefano's deposition, the USABS is an "independent and autonomous" organization. (T1 189:20-22.)

11

Accordingly, even after discovery, Plaintiff has not sufficiently alleged that there is something more, in addition to the receipt of funds or the issuance of grants, to subject the USOPC to the jurisdiction of New Jersey's courts.

As to whether the funds from corporate sponsors constitute purposeful availment, Plaintiff contends that there is specific personal jurisdiction over the USOPC because it received financial support from corporate sponsors, hosted fundraising events in New Jersey, and received contributions from corporate entities in New Jersey. (Opp'n Br. I at 13.) Specifically, jurisdictional discovery revealed that during the relevant time period, Global Sports Consultants, LLC, D/B/A Jet Set Sports ("Jet Set Sports") and Cooperative Sports, LLC D/B/A Cosport ("Cosport")—each with a principal place of business in New Jersey—entered into two separate licensing agreements authorizing Jet Set Sports and Cosport to use the Olympic trademark in exchange for royalty payments. (*Id.* at 12–13.) But merely receiving funds, entering into contracts, and interacting with New Jersey corporations does not mean there is purposeful availment of the forum. *See Ford Motor Co.*, 592 U.S. at 359 (emphasizing that the inquiry is whether the *defendant* took "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State"); *G&C Fab-Con, LLC v. M&S Civil Consultants, Inc.*, Civ. No. 20-08425, 2021 WL 268177, at *5 (D.N.J. Jan. 27, 2021) ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident.") (internal quotation marks and citations omitted); *Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 152–53 (3d Cir. 1996); *see Grand Entm't Grp., Ltd. V. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("[A] contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum'") (quoting *Burger King,* 471 U.S. at 478); *Mellon Bank (East) v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557

12

(3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant").

Furthermore, Plaintiff cites emails from the USOPC to New Jersey Olympians with an invitation to attend the Somerset Patriots minor league baseball game to honor Olympic night, (ECF No. 132-6), and an invitation by Jet Set Sports of a networking event in Morristown, (ECF No. 132-7) as a way to show that the USOPC targeted New Jersey.  Plaintiff argues that the USOPC repeatedly communicated with Pavle in New Jersey to help with community initiatives, each time concealing that bobsledding can cause CTE and other traumatic brain injuries.  (Opp'n Br. I at 20–21.)  In rebuttal, the USOPC argues that the email invitations to Olympic athlete alumni about events hosted by third parties are insufficient to show purposeful availment because the USOPC did not host the events in New Jersey; it merely acted as a facilitator of mass email invitations. (USOPC Reply Br. at 8 (citing *J.S. v. Dalton Schs., Inc.*, Civ. No. 18-10258, 2019 WL 161507, at *3 (D.N.J. Jan. 9, 2019))).

The Court agrees with the USOPC.  The email solicitations and invitations in this case are not purposeful contacts with New Jersey because an email solicitation about an event to former Olympians is not sufficient to show a deliberate targeting of the forum.  *See Baanyan Software Servs., Inc. v. Kuncha*, 81 A.3d 672, 679 (N.J. App. Div. 2013) ("[W]e have held that telephonic and electronic communications with individuals and entities located in New Jersey alone, are insufficient minimum contacts to establish personal jurisdiction over a defendant."); *Real Est. Sols. Today LLC. v. Scifo*, Civ. No. 20-4512, 2021 WL 486896, at *5 (D.N.J. Feb. 10, 2021) ("Informational communications in furtherance of [a contract between a resident and a nonresident] do[] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]") (first, second, and third alterations in original).

Even more, to RSVP to the Morristown event, a New Jersey Olympian would need to email Jet Set Sport, not the USOPC, (*see* ECF No. 132-7), further showing that the USOPC's contacts with New Jersey via an email invitation are too attenuated.

In sum, the Court finds that even after jurisdictional discovery, the Amended Complaint lacks the necessary allegations to show that the USOPC purposefully availed itself of the New Jersey forum. Accordingly, Counts One, Two, and Three of the Amended Complaint will be dismissed against the USOPC without prejudice. Plaintiff will not be given further leave to amend against the USOPC.[13]

### B.  SPECIFIC PERSONAL JURISDICTION OVER USABS

Turning next to the USABS, for the reasons that follow, the Court finds that there is specific personal jurisdiction over it.

#### 1.  Purposeful Availment

In the Motion, the USABS argues that there is no evidence that the USABS purposefully availed itself of the benefits and protections of the laws of New Jersey. (USABS Br. at 8.) The USABS contends that any injury arising from Pavle's backyard bobsled track was not the fault of USABS because the track was a personal workout device. (*Id.* at 12.) The USABS also argues that even though it sometimes reimbursed Pavle for travel to and from New Jersey or that he was treated by doctors in New Jersey which were paid by the USABS, there was no specific targeting of New Jersey. (*Id.* at 13, 16.)

In rebuttal, Plaintiff argues that there is specific personal jurisdiction over the USABS because the "USABS knowingly and intentionally targeted New Jersey athletes and donors by hosting recruiting events (which the USABS refers to as 'BurliMan' events) in New Jersey, every

---

[13] The Court does not reach whether Plaintiff's claims arise out of or relate to the USOPC's contacts or whether exercising jurisdiction would offend traditional notions of fair play and substantial justice.

14

year from 1995 to 1999." (Opp'n Br. II at 7–12.)  More broadly, Plaintiff argues that "[e]very contact USABS ever had with [Pavle] in New Jersey is solely because of the USABS's efforts to cultivate a market and find athletes in New Jersey." (*Id.* at 9.)  Next, Plaintiff argues that the USABS knowingly and intentionally assisted in the construction of and improvement to Pavle's backyard bobsled track. (*Id.* at 12.)  Plaintiff adds that the USABS sourced some of the materials used to build the push-track. (*Id.* at 13.)  Additionally, Plaintiff argues that the USABS knowingly and intentionally targeted companies and residents in New Jersey for its own financial gain via fundraising events and dinners. (*Id.* at 14–16.)  Plaintiff further argues that the USABS paid Pavle approximately $75,000 during the course of his career excluding payment for Pavle's travel to and from New Jersey. (*Id.* at 17.)

      The record reveals that Pavle was a USABS athlete between 1995 and 2008, as a result of recruiting events held in New Jersey. ("USABS Responses to Interrogatories," ECF No. 127-3.)  The record also shows that the USABS conducted several BurliMan recruiting events in New Jersey. ("USABS First Supplemental Responses," ECF No. 127-6.)  More specifically, Lisa Carlock's September 16, 2024 deposition confirmed that Pavle participated in two BurliMan events at Seaside Heights and then eventually joined the USABS team in 1997. (T4 111:20-25 to 112:1-10.)[14]  On top of this, the USABS utilized newspapers and magazines to reach out to New Jersey residents, and targeted New Jersey politicians for more publicity at the BurliMan events. (T4 126:3-10.)  Furthermore, the USABS sent money to Pavle on June 15, 2005, for an appearance at one of its New Jersey fundraisers. (*Id.* at 12.)  As further evidence of purposeful availment, discovery showed that the USABS held many fundraising dinners in New Jersey targeted at New Jersey residents and corporate entities. (ECF Nos. 127-11; 133-19.)  These facts, when taken

---

[14] T4 refers to Lisa Carlock's deposition transcript attached to the USABS's moving brief at ECF No. 127-12.

15

together, show a deliberate targeting of New Jersey. (*See* Am. Compl. ¶¶ 70–87 (summarizing the allegations of purposeful availment as to USABS)).

More specifically as to the recruiting events, the USABS argues that its recruiting events are insufficient to confer specific personal jurisdiction because they were limited in scope and over twenty-seven years ago. (USABS Br. at 14.) Plaintiff, however, argues that the USABS hosted at least seven separate BurliMan events in New Jersey and Pavle tried out at two of them and was successfully recruited in 1997. (Opp'n Br. II at 10.) The Court agrees with Plaintiff and finds that the USABS purposefully availed itself of New Jersey's benefit by conducting recruiting events in New Jersey in 1994, 1995, 1996, 1997, 1998, and 1999. (ECF No. 127-8.) By hosting at least seven recruiting events in New Jersey and directing activities towards New Jersey residents, the USABS knowingly and intentionally targeted New Jersey athletes and donors. In fact, the Amended Complaint alleges that at the 1997 BurliMan event, the USABS set up a portable push-track and "a recruiter convinced Pavle to take a break from his job and give the sled a try." (Am. Compl. ¶ 91.) It would simply not be fair if the USABS can come to New Jersey to advertise and recruit athletes—on multiple occasions—and then not be subject to this Court's jurisdiction. *Marten*, 499 F.3d at 296 ("The Due Process Clause of the Fourteenth Amendment requires that non-resident defendants have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

The Court in its earlier decision found that one recruiting event in 1997 was insufficient and too attenuated to establish jurisdiction over the USABS. (ECF No. 55 at 13 ("The recruiting event occurred nearly 27 years ago, and accordingly the Court finds this is too "attenuated" for USABS to be haled into the forum state.") However, the benefit of jurisdictional discovery has revealed that the USABS conducted numerous recruiting events in New Jersey and purposefully

16

availed itself of New Jersey's laws by aiming advertisements and recruiting events at New Jersey residents. (T4 111:20-25 to 112:1-10; ECF No. 127-8.) *See Dupell v. Franklin Towne Charter Sch.*, Civ. No. 16-278, 2016 WL 7042068, at *5 (D.N.J. Dec. 2, 2016). The USABS's contacts with New Jersey were more than just the single recruiting event twenty-seven years ago that was previously represented to the Court prior to jurisdictional discovery. These contacts make it reasonable that the USABS could anticipate being haled into court in New Jersey. *See World–Wide Volkswagen Corp.*, 444 U.S. at 297; *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252 (1989) (concluding that a seller was subject to specific personal jurisdiction in New Jersey because the seller telephoned the buyer in New Jersey and created contacts with the forum).

Moreover, jurisdictional discovery showed that the USABS held multiple fundraising events and dinners in New Jersey which are sufficient for the Court to exercise specific personal jurisdiction over the USABS when considering the totality of the contacts that the USABS has with New Jersey. (ECF Nos. 127-11; 133-19.) Although the Court reiterates that the receipt of funds alone are insufficient to satisfy the requisite minimum contacts needed, the record here shows that those fundraising events, donations, and receipt of funds were in addition to the USABS's recruiting events, which shows a deliberate and intentional targeting of New Jersey for the Court to exercise personal jurisdiction over the USABS. *See Traisman*, 2020 WL 2847751, at *9.

In sum, the Court finds that the USABS has purposefully availed itself of the benefits and obligations of New Jersey's laws.

        2.    <u>Arise Out of or Relate To</u>

In addition to purposeful availment, for the reasons that follow, the Court finds that Plaintiff properly alleges that his claims "arise out of or relate to" the USABS's contacts with New Jersey. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). This prong requires that "there []

17

be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulations.'" *Ford Motor Co.*, 592 U.S. at 360 (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 262) (alteration in original). In *Ford*, the Supreme Court held that the defendant's connections to the forum states via billboards, TV and radio spots, print ads, and direct mail were sufficient to show relatedness for purposes of specific personal jurisdiction, even if the specific defective product at issue was not sold in the forum. *Id.* at 355, 365 ("When a company like [defendant] serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit."). Notably, the Court distinguished between the "arise out of" language, which denotes causation, and the "relates to" language, which contemplates that "some relationship will support jurisdiction without a causal showing." *Id.* at 362.

As the Court previously noted in its earlier decision, "the second prong is premised on the finding that USABS purposefully availed itself by hosting recruiting events in the forum." (ECF No. 55 at 14.) The USABS argues that Pavle's injuries (i.e. his CTE) arose from the 36 World Championships, two North American Cups, and the 2006 Winter Olympics that he participated in which did not take place in New Jersey. (USABS Br. at 11.) The USABS argues that Plaintiff "can certainly not show that the claim of negligence and resultant injury in any way arose out of or is related to USABS's attenuated contact with New Jersey." (*Id.* at 20.)

Plaintiff argues that his claims directly arise out of or relate to the USABS's recruitment efforts because without them, Pavle would not have joined the bobsled team and gotten CTE from bobsledding. (Opp'n Br. II at 20.) Plaintiff further argues that the USABS actively misled and concealed from Pavle the risk of bobsledding, and Plaintiff's claims arose directly from that

18

concealment. (*Id.* at 21.) Plaintiff also argues that his claims arise out of the USABS's financial relationships with New Jersey companies and the USABS's financial assistance of Pavle's backyard bobsled track. (*Id.* at 23.)

Given the information from jurisdictional discovery, and having previously concluded that there has been purposeful targeting of New Jersey, the Court finds that there is a direct correlation between the USABS's recruiting events in New Jersey and Plaintiff's claims. (*See* Am. Compl. ¶¶ 84, 88, 91, 100–111, 114.) Notably, the Court agrees with Plaintiff that without the USABS's recruiting events in New Jersey, Pavle would not have joined the United States bobsled team.

Therefore, the Court finds that Plaintiff's claims arise out of or relate to the USABS's purposeful contacts with New Jersey.

### 3. Due Process

Lastly, maintenance of the suit against the USABS in New Jersey does not offend traditional notions of fair play and substantial justice. Plaintiff argues that maintenance of the suit against the USABS does not violate due process. (Opp'n Br. II at 26.) The USABS does not argue that the Court's exercise of jurisdiction is unreasonable.

In determining whether the requirement to comport with "fair play and substantial justice" is satisfied, the Court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. *Asahi*, 480 U.S. at 113. It must also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Here, although the USABS does not argue that the Court's exercise of jurisdiction is unreasonable, the Court finds that the factors to consider weigh in favor of jurisdiction. For example, the burden of having to defend this action in New Jersey is relatively low given that the

19

USABS is headquartered in Lake Placid, New York, and not across the country. New Jersey also has a strong interest in protecting its citizens from injuries that arise from out-of-state actors, and Plaintiff has a strong interest in obtaining relief. As the Amended Complaint alleges, "New Jersey is central to this case." (Am. Compl. ¶ 88.) In sum, the Court finds that there is specific personal jurisdiction over the USABS.[15]

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** the USOPC's Motion (ECF No. 126). Counts One, Two, and Three of the Amended Complaint against the USOPC will be dismissed and Plaintiff will not be given leave to amend his Amended Complaint as to the USOPC. Additionally, the Court will **DENY** the USABS's Motion (ECF No. 127). An appropriate Order will follow.

Date: April 28, 2025

                                                 s/ Zahid N. Quraishi
                                                 **ZAHID N. QURAISHI**
                                                 **UNITED STATES DISTRICT JUDGE**

---

[15] The USABS does not argue that Plaintiff fails to state a claim under Rule 12(b)(6). Accordingly, the Court does not address whether Plaintiff adequately alleged his claims.